..

1  J. SCOTT RUSSO (CALIFORNIA BAR NO. 155631)
   RUSSO & DUCKWORTH, LLP
2  3404 VIA OPORTO, SUITE 201
   NEWPORT BEACH, CA 92663
3  Telephone No. (949) 752-7106
   Email:  jsrusso@russoandduckworth.com
4

5  Attorneys for Plaintiff
   Richard R. Irvin
6

7              UNITED STATES DISTRICT COURT

8             CENTRAL DISTRICT OF CALIFORNIA

9

10 Richard R. Irvin, an individual,          Case No.:

11
                Plaintiff,
12                                           _____

13      vs.
                                             **COMPLAINT FOR:**
14 Betty F. Irvin; Betty F. Irvin, Trustee
   of the Robert G. Irvin and Betty F.       **1. BREACH OF FIDUCIARY**
15 Irvin Community Property Trust dated          **DUTIES;**
   March 1, 1990, as amended and             **2. ACCOUNTING; AND**
16 restated;  Diane Irvin, Lawrence  O.      **3. DECLARATORY RELIEF**
   Irvin, an individual; Robert J. Irvin, an
17 individual; C Punch Ranch, Inc., a
   Nevada corporation; Kumiva Group,
18
   LLC, a Delaware limited liability         (JURY TRIAL DEMANDED)
19 company,
20
                Defendants.
21

22

23

24

25      Plaintiff, Richard R. Irvin ("Plaintiff"), complains of Defendants, and

26 each of them, and alleges as follows:

27

28

1. Plaintiff Richard Irvin ("Plaintiff") is an individual and resident of Scottsdale, Arizona.

2. Defendant Betty F. Irvin ("Betty Irvin") is an individual who resides at 539 Spoleto Drive, Pacific Palisades, California 90272. Betty Irvin is Plaintiff's mother and the widow of Robert G. Irvin ("Bob Irvin"), who died in 2015. Plaintiff is informed and believes that, until at least 2023, Betty Irvin was a director and officer of C Punch Ranch, Inc.

3. Betty Irvin is also trustee of defendant Robert G. Irvin and Betty F. Irvin Community Property Trust dated March 1, 1990, as completely amended and restated ("R&B Trust"). The settlors and initial trustees were Bob Irvin and Betty Irvin. On June 11, 2015, Bob Irvin died.

4. Defendant Diane Irvin is an individual and a resident of Pasadena, California. Diane Irvin is a California licensed attorney, State Bar No. 149025, with the address of 600 S Lake Ave Ste 200, Pasadena, CA 91106. Diane Irvin is a director and officer of C Punch Ranch, Inc.

5. Defendant Lawrence O. Irvin ("Larry Irvin") is an individual and a resident of Nevada. Plaintiff is informed and believes that Larry Irvin is a shareholder and, until 2023, was a director of C Punch Ranch, Inc.

6. Defendant Robert J. Irvin ("Robert Irvin") is an individual and a resident of California. Plaintiff is informed and believes that Robert Irvin is a shareholder and director of C Punch Ranch, Inc.

7. Defendant Kumiva Group, LLC ("Kumiva") is a Delaware limited liability company registered to do business in the State of California with a principal place of business at 600 S Lake Ave Ste 200, Pasadena, CA 91106. Kumiva was originally formed as ATI Services, LLC, a Delaware limited liability company. Bob Irvin and Betty Irvin, through their revocable trusts, have been the sole members of Kumiva. With Bob Irvin passing, Betty Irvin became Kumiva's sole member.

8.      Armored Transport, Inc., renamed ATI Systems International, Inc. ("ATI") was a California C corporation whose majority shareholders were Bob Irvin and Betty Irvin. Together, Bob Irvin and Betty Irvin owned 62% of the stock of ATI and Bob Irvin was chairman of the board. Until 2007, as the majority shareholder with Betty Irvin and chairman of the board, Bob Irvin exercised control over ATI, and he was the final decision maker. In 2007, all the stock of ATI was sold in a merger for $341,000,000 in cash. When the sale occurred, Bob Irvin and Betty Irvin received over $160,000,000 in cash and unencumbered commercial rental properties at that time grossing over $4,600,000/year in rents. Bob Irvin and Betty Irvin held the rental properties in Kumiva.

9.      Defendant C Punch Ranch, Inc. ("CPRI") is a Nevada for-profit corporation with its principal place of business in the city of Lovelock, Pershing County, Nevada. CPRI is qualified to do business in the State of California but, as of the date of this Complaint, its status is "Franchise Tax Board Forfeited." CPRI was originally named C-Punch Corporation, but it later amended its Articles of Corporation to change the name. CPRI's current president is Diane Irvin.

10.      At all times mentioned herein, each of the Defendants was, and is, the agent, servant and employee of each of the other Defendants, and all the things alleged to have been done by said Defendants were done in the capacity of, and as agent of, the other Defendants, and each of them.

## JURISDICTION AND VENUE

## GENERAL FACTS

11.      This court has Jurisdiction under 28 U.S.C. Section 1332 because Plaintiff, on the one hand, and defendants Betty Irvin, R&B Trust, Diane Irvin, Larry Irvin, Robert Irvin, CPRI and Kumiva are all citizens of different states, and Plaintiff's damages exceed $75,000.00, exclusive of

interest and costs. Venue is proper in this District under 28 U.S.C. 139 (b)(1) because defendant Betty Irvin is a resident of Los Angeles county and CPRI is managed in Los Angeles county. Further, the events or omissions giving rise to the claim occurred in Los Angeles County.

12.    C Punch Ranch is comprised of agricultural and recreational land in Pershing County, Nevada. As of 2015, C Punch Ranch was comprised of 81,762 acres of owned land and 1,192,778 acres of land leased from the U.S. Department of Interior, Bureau of Land Management ("BLM"). As of 2015, 31,075 acres of C Punch Ranch was owned by CPRI, and 50,687 acres of C Punch Ranch was owned by Kumiva. C Punch Ranch's legitimate business is agriculture and cattle.

13.    CPRI was formed in 1968 by Plaintiff's grandfather, George H. Irvin ("George Irvin") and Bob Irvin. George Irvin was also the original founder and majority shareholder of ATI. George Irvin was never a shareholder personally in CPRI. The majority shareholder of CPRI was ATI, but as explained further below, without complying with the Bylaws, the ATI shares were retitled in the name of Bob Irvin or R&B Trust.

14.    Plaintiff is informed and believes that from 1968 until 2019, CPRI lost money every year because CPRI was paying for Bob Irvin's, Betty Irvin's and later Diane Irvin's horseracing hobby. In 2020, CPRI made a profit for the first time only because of government subsidized insurance for drought, which paid CPRI over $20,000,000 from 2020-2023.

15.    The original Articles of Incorporation of CPRI are attached hereto as **Exhibit "1"** and are incorporated by reference. The Articles of Incorporation have been amended many times, as discussed below, to authorize more stock.

16.    The original Bylaws of CPRI are attached hereto as **Exhibit**

..

**"2"** and are incorporated by reference. Plaintiff is informed and believes that the Bylaws have never been amended.

17.     Plaintiff contends that he is the rightful owner of the equivalent of a 4.5% shareholder interest in CPRI.

18.     As set forth in this Complaint, since its inception, Bob Irvin and Betty Irvin, and now daughter Diane Irvin, have used CPRI as a tax fraud to funnel millions of dollars for their thoroughbred racing hobby, which Betty Irvin continued after Bob Irvin's passing. Bob Irvin and Betty Irvin purchased, raised, trained and raced horses under the auspices of CPRI, costing millions and millions of dollars.  Their thoroughbred racing hobby was never a legitimate business, as it cost CPRI millions and rarely actually had any material income when compared to the costs. From 1968 until 2019, Bob Irvin and Betty Irvin had CPRI pay for their racehorse hobby, causing CPRI to show a loss every year. Plaintiff has been prevented from ever seeing any CPRI financial statements, even when Plaintiff was president of ATI, CPRI's largest shareholder. Plaintiff is informed and believes that CPRI included the costs of the horse racing operations amongst CPRI's agricultural and cattle expenses so as not to be a "red flag" to the Internal Revenue Service.

19.     The tax fraud was that Bob Irvin and Betty Irvin, as the majority shareholders of ATI, had ATI make millions of dollars in loans to CPRI to fund their thoroughbred racing hobby. Since CPRI never had money to repay the loans, Bob Irvin and Betty Irvin caused CPRI to authorize new stock and then issued stock to ATI in lieu of repayment. Plaintiff is informed and believes, and based thereon alleges, that ATI would deduct the millions in loans to CPRI for Bob Irvin's and Betty Irvin's hobby, so that: (1) ATI would fraudulently avoid paying taxes, and (2) Bob Irvin and Betty Irvin would not be required to receive wages or profit

distributions from ATI, for which they would be required to pay personal income tax to pay for their hobby.

20.    Plaintiff is informed and believes, and based thereon alleges, that when ATI sold in 2007, Bob Irvin and Betty Irvin, who netted over $160,000,000 from the sale, continued the same tax avoidance scam with Kumiva loaning money to CPRI to fund their hobby, and since there was no possibility of repayment, CPRI stock would be authorized and issued to Kumiva in lieu of repayment.

21.    By causing CPRI to amend its authorization and issue stock to ATI to cheat the Internal Revenue Service, Bob Irvin and Betty Irvin diluted all the other shareholders' interest, including Plaintiff. Plaintiff brings this action for a court declaration of his proper shareholder interest as shareholder of CPRI, an accounting for the expenses incurred by CPRI to pay for Bob Irvin's, Betty Irvin's and Diane Irvin's horse racing hobby and damages caused by Bob Irvin's and Betty Irvin's tax avoidance scam, which was supported and approved by directors Betty Irvin,  Diane Irvin, Larry Irvin and Robert Irvin.

22.    The original stock authorization for CPRI was 5,000 shares at $100 par value. At the first director meeting in 1968, CPRI  issued 3,820 shares at $100/share. ATI purchased 3,620 shares and C&W Advertising Co. purchased 200 shares. The money was used to purchase real estate. The Minutes of First Meeting of Incorporators and Directors are attached as **Exhibit "3".**

23.    In August 1969, ATI purchased 788 shares of CPRI stock for $78,800. The money was used to purchase real estate. The minutes of the August 28, 1969, director meeting is attached as **Exhibit "4".**

24.    In December 1969, Marion Goodwin and Bob Irvin were each issued 10 shares of stock for bonuses. The minutes of the December 15,

1969, board meeting are attached as **Exhibit "5"**. This left only 372 shares of unissued stock.

25.    In December 1970, Marion Goodwin and Bob Irvin were again each issued 10 shares of stock for bonuses. The minutes of the December 15, 1970, board meeting are attached as **Exhibit "6"**. This left only 352 shares of unissued stock.

26.    The CPRI shareholders as of December 15, 1971, were ATI (4,428 shares), Bob Irvin (180 shares) and Marion Goodwin (20 shares). The December 15, 1971, stockholder meeting minutes are attached as **Exhibit "7"**. There is no indication of how Bob Irvin acquired 180 shares when he had only been issued 20 shares according to the board minutes.

27.    The December 15, 1971, board meeting minutes are attached as **Exhibit "8",** and reflect: (1) CPRI losing money ($55,000-$60,000), (2) the racing horse purchases, and (3) the issuance of 10 more shares of CPRI stock each to Bob Irvin and Marion Goodwin for bonuses which left only 332 shares of unissued stock.

28.    The December 4, 1972, board meeting minutes are attached as **Exhibit "9"**, and reflect: (1) more racing horse purchases, and (3) the issuance of 10 more shares of CPRI stock each to Bob Irvin and Marion Goodwin for bonuses which left only 312 shares of unissued stock.

29.    The November 8, 1973, board meeting minutes are attached as **Exhibit "10"**, and reflect: (1) losses from the horse racing operations, and (2) the issuance of 10 more shares of CPRI stock each to Bob Irvin and Marion Goodwin for bonuses which left only 292 shares of unissued stock.

30.    The December 9, 1974, board meeting minutes are attached as **Exhibit "11"**, and reflect: (1) CPRI losses, (2) losses from the horse racing operations, and (3) the leasing of all the racehorses to ATI. The

racehorse lease, for 8 racehorses, is attached as **Exhibit "12"**. Plaintiff is informed and believes that the lease of all the racehorses to ATI was tax fraud so that ATI paid for and deducted the cost of the racehorses, training, board, vet bills, transportation and jockey fees. Again, it was a scheme to avoid paying taxes by wrongfully deducting the cost of Bob Irvin's and Betty Irvin's hobby.

31.    On August 1, 1975, Articles of Incorporation were amended and the authorized capital stock of CPRI was increased from 5,000 shares to 10,000 shares at the par value of $100/share. ATI then held 4,428 shares, Bob Irvin 270 shares and Marion Goodwin 50 shares. The board meeting minutes are attached as **Exhibit "13"**.

32.    The November 8, 1976, board meeting minutes are attached as **Exhibit "14"**, and reflect that CPRI had debt to ATI of $436,000 which would be cancelled in exchange for 4,360 shares of CPRI $100 par value stock. The offer by ATI, signed by Bob Irvin, to exchange the $436,000 debt for 4,360 shares of CPRI stock, which was accepted by Bob Irvin as president of CPRI, is attached as **Exhibit "15"**. This was not an arm's length transaction. ATI now owned 8,856 of the 10,000 authorized shares of CPRI.

33.    In June 1981, George Irvin died, and there was probate litigation with George Irvin's wife Rita Irvin. Plaintiff and certain of his siblings were beneficiaries of George Irvin's trust. Bob Irvin was the trustee of George Irvin's trust. Bob Irvin settled the probate litigation by effectively disinheriting Plaintiff and his siblings from George Irvin's trust. However, upon the settlement of the probate litigation, Plaintiff and his disinherited siblings each received stock in CPRI from ATI, Plaintiff receiving 305 shares.

34.    In 1982, CPRI started purchasing Kentucky bred racehorses.

35.    The May 10, 1982, minutes of the shareholders of CPRI are attached as **Exhibit "16,"** and reflect that the total issued stock of CPRI is only 6,348 shares, with the following ownership: Bob Irvin (4,708 shares), Larry Irvin (420 shares), Plaintiff (305 shares), James Irvin (305 shares), Christopher Irvin (305 shares) and Gregory Irvin (305 shares).  Thus, Plaintiff owned 4.5% of the issued stock. Plaintiff is informed and believes that Bob Irvin did not purchase any stock, but rather changed the ownership of ATI's stock to himself with no consideration.

36.    The May 10, 1982, board minutes of CPRI are attached as **Exhibit "17",** and reflect: (1) that in March 1982, CPRI repurchased all of ATI's stock, which the minutes state was only 2,790 shares, for $279,000, (2) CPRI continues to lose money and (3) "Kentucky bred horses will reach the track." The stock certificate to evidence repurchase of ATI's stock, attached hereto as **Exhibit "18"**, reflects that the stock is being transferred to Bob Irvin, not CPRI which was to pay for it.

37.    According to the May 15, 1983, shareholder meeting minutes, Larry Irvin and Christopher Irvin became members of the CPRI board of directors.

38.    The March 19, 1984, board minutes of CPRI are attached as **Exhibit "18"**, and reflect: (1) the rescission of the purchase and retirement of the 2,790 shares of CPRI stock owned by ATI because of the poor financial condition of CPRI, and (2) CPRI paid $269,000 for Kentucky new weanlings, borrowing the money from Bob Irvin.

39.    At the October 2, 1984, board meeting, and the shareholder meeting on the same date, the company name was changed from C-Punch Corporation to C Punch Ranch, Inc. The board and shareholder minutes are attached hereto as **Exhibit "19"**. The shareholder minutes state that Bob Irvin owns 6,798 shares, Larry Irvin owns 520 shares, and

..

Plaintiff, James Irvin, Christopher Irvin and Gregory Irvin each own 305 shares, and Diane Irvin and Robert Irvin each own 300 shares. Plaintiff is informed and believes that Bob Irvin still had never purchased CPRI stock personally, but instead just claimed ATI's stock as his own, and the shares identified as belonging to Diane Irvin, Robert Irvin, and the increase in the shares of Larry Irvin, were the 2,790 shares owned by ATI for which the sale back to CPRI was rescinded, Bob Irvin then claiming the shares were his ( i.e., Bob Irvin transferred [ATI's] shares to himself, Diane Irvin, Robert Irvin and Larry Irvin).

40.    The October 2, 1984, action by directors attached hereto as **Exhibit "20"**, reflect that the board, comprised of Bob Irvin, Christopher Irvin and Larry Irvin, increased the authorized stock of CPRI to 70,000 shares. This would allow ATI to lend more money to CPRI for Bob Irvin's and Betty Irvin's horseracing hobby, and have ATI forgive the loans in exchange for more CPRI stock of little value.

41.    August 28, 1985, board minutes are attached hereto as **Exhibit "21"** and reflect that the board increased the authorized stock of CPRI by 30,000 more shares, bringing the authorized shares to 100,000 shares at $100 par value. This would allow ATI to loan CPRI another $9,000,000 for Bob Irvin's and Betty Irvin's horse racing hobby, knowing that CPRI has no profit and would never repay ATI.

42.    The August 28, 1985, board unanimous written consent is attached hereto as **Exhibit "22',** and reflects that $2,943,800 in loans by ATI to CPRI was being exchanged and cancelled for 29,438 shares of CPRI stock issued by CPRI. The Agreement for the Exchange of Shares is also included in Exhibit "22".

43.    The August 28, 1985, board minutes are attached hereto as **Exhibit "23"** and reflect the stock of CPRI would be split and the

outstanding stock would be split on a four to one basis and each share currently registered would be issued three additional shares. Thus, Plaintiff's CPRI shares increased to 1,220.

.

44.    The December 27, 1994, board minutes are attached hereto as **Exhibit "24"**, and reflect: (1) in 1993, ATI returned the 29,438 shares it had received in 1985 for cancelling $2,943,000 in loans to CPRI for $1,270,000, which was not actually paid but was evidenced by a note, and (2) CPRI was issuing ATI 11,000 shares of stock in exchange for cancelling the note.

45.    The May 31, 1999, written consent by shareholders is attached hereto as **Exhibit "25"** and reflect: (1) the new board of directors is Betty Irvin, Bob Irvin and Larry Irvin, (2) the issued CPRI shares includes R&B Trust (32,740 shares), ATI (11,000  shares) and Plaintiff (1,925 shares). Plaintiff is informed and believes that, as of May 1, 1999, Bob Irvin and Betty Irvin had never personally paid for CPRI stock, but again were claiming as their own ATI's stock. Plaintiff is informed and believes that "Robert G. and Betty F. Irvin Trust" refers to the R&B Trust.

46.    The February 15, 2004, board minutes, attached as **Exhibit "26"**, reflect that the board reduced the par value of CPRI stock from $100 to $0.01. The amended and restated Articles of Incorporation dated November 4, 2004, are also attached as **Exhibit "26"** and reflect: (1) the total authorized stock being 76,878 shares at $0.01 par value and (2) no shareholder may inspect the books and records of CPRI except as required by law, excepting only the stock ledger. Plaintiff has never been permitted to see the books and records of CPRI, and only in 2023 was he first permitted to see the minutes of the board of directors.

47.    The December 29, 2004, board minutes, attached as **Exhibit**

**"27"**, reflect that R&B Trust was purchasing 4,000 new shares of CPRI stock for $400,000.

48.    The December 22, 2008, board minutes, attached as **Exhibit "28"**, reflect that the authorized shares were increased from 100,000 to 200,000 at $0.01 par value. Further, (1) CPRI was issuing Kumiva 40,600 shares of stock in exchange for the cancellation of $4,057,546 in loans and (2) CPRI was issuing Bob Irvin 6,800 new shares to repay him for paying $679,920 for CPRI obligations.

49.    The January 6, 2010, board minutes, attached as **Exhibit "29"**, reflect that: (1) CPRI had lost $500,000 in 2009, (2) Kumiva had loaned CPRI another $582,349, (3) CPRI was purchasing $5,480,732 in commercial real estate from Kumiva and (4) in exchange for the commercial real estate CPRI was issuing the R&B Trust 60,631 shares of CPRI stock.

50.    The January 6, 2010, shareholder consent and adoption of resolutions, attached as **Exhibit "30"**,  states that the CPRI board members are Betty Irvin, Bob Irvin, Larry Irvin, Diane Irvin and Robert Irvin and lists what the board decided the shareholder interests are, including R&B Trust (136,394 shares), Plaintiff (1,525 shares) and Kumiva (40,600 shares).

51.    In 2015, Bob Irvin died. Plaintiff is informed and believes that all of Bob Irvin's property was community property or held in either revocable or non-revocable trust with Betty Irvin. Plaintiff is informed and believes that, as of October 2020, Betty Irvin is the owner of: (1) all shares of CPRI in the R&B Trust and (2) all shares owned by Kumiva, as Betty Irvin, through her additional trusts, is its only member.

52.    After over 50 years losing money every year because CPRI was paying for Bob Irvin's and Betty Irvin's horse racing hobby, in 2020

..

CPRI purchased federally subsidized Pasture Range and Forest Insurance policy ("PRF Insurance"). PRF Insurance insures against drought.

.

53.    The September 25, 2020, board meeting minutes are attached as **Exhibit "31,"** and reflect that the PRF Insurance paid CPRI over $7,000,000.  Plaintiff is informed and believes that between 2020-2023, the PRF Insurance has netted CPRI $14,000,000, but Plaintiff is unaware of how the money was allocated as Defendants refuse to share any financial information about CPRI with Plaintiff. As a 4 1/2 % shareholder of CPRI, $630,000 of the PRF net profit would be Plaintiff's.

54.    Attached hereto as **Exhibit "32"** is a 2015 California Thoroughbred Racing Association article on Betty Irvin and Diane Irvin and their horseracing.

55.    Attached hereto as **Exhibit "33"** is a publication listing Bob Irvin's and Betty Irvin's horseracing statistics and earnings from 2000-2015.

## First Cause of Action

(Breach of Fiduciary Duty and Self-Dealing)

Against Betty Irvin, R&B Trust, Diane Irvin, Lawrence Irvin, Robert Irvin)

56.    Plaintiff realleges and incorporates by this reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

57.    Since 1984, Plaintiff has been a shareholder of CPRI.

58.    As directors of CPRI, Defendants, and each of them, were obligated to act in good faith and with due regard to the interests of Plaintiff and the other shareholders of CPRI.

59.    Plaintiff is informed and believes, and based thereon alleges, that Defendants breached their fiduciary duties and obligations to Plaintiff and violated the relationship of trust and confidence by participating in Bob

..

Irvin's and Betty Irvin's tax avoidance scam by: (1) having CPRI pay the
millions and millions of annual costs for Bob Irvin's, Betty Irvin's and later
Diane Irvin's horse racing hobby causing CPRI to lose money every year,
(2) participating in and approving loans by ATI and Kumiva to CPRI, loans
that were never intended to be paid back but rather would then be
converted to new CPRI stock approved by Defendants, all so that ATI and
Kumiva disguised their millions of dollars of funding of the horse racing
hobby as legitimate investments in CPRI.

60.    As a result of Defendants' breach of their fiduciary duties,
Plaintiff was damaged by the dilution of his shareholder interest in CPRI.

61.    As a result of Defendant's breach of their fiduciary duties,
Plaintiff was damaged in an amount in excess of $75,000 to be proved at
time of trial.

62.    Since becoming a shareholder of CPRI, and because he owns
less than a 15% shareholder interest, Plaintiff has been prevented by CPRI
and the Nevada law (Nevada Revised Statute 78.257) from reviewing
books and records  of CPRI. Defendants utilized Nevada Revised Statue
78.257 to prevent Plaintiff from learning of their breaches of their fiduciary
duties, tax fraud and wrongdoing. In 2023, Defendants for the first time
allowed Plaintiff to review the board minutes, but as of the filing of this
Complaint Plaintiff has been prevented from seeing any financial
statements or accounts of CPRI which would have caused the discovery of
his claims alleged herein.

## **Second Cause of Action**

### (Accounting)

### Against CPRI

63.    Plaintiff realleges and incorporates by this reference all of the
preceding paragraphs of this Complaint as though fully set forth herein.

..

64.   Plaintiff, as a shareholder of CPRI, is ultimately paying for the losses of CPRI and the costs for Bob Irvin's, Betty Irvin's and Diane Irvin's horseracing hobby which has been paid for by CPRI. Plaintiff seeks an accounting by CPRI for the expenses paid by CPRI for Bob Irvin's, Betty Irvin's and Diane Irvin's horseracing hobby, as well as for any income received by CPRI from the horseracing hobby.

65.   Plaintiff further seeks an accounting of the shareholder interests for CPRI, how the shares were acquired and the consideration paid, including Plaintiff's own shareholder interest.

66.   Plaintiff further seeks an accounting for all PRF Insurance payments, where the money was allocated and why.

## Third Cause of Action

### (Declaratory Relief)

### Against Betty Irvin, R&B Trust and Kumiva

67.   Plaintiff realleges and incorporates by this reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

68.   A controversy exists between Plaintiff, on the one hand, and Defendants, on the other hand regarding the Defendants' stock ownership in CPRI. The CPRI Bylaws state, at Section 8, that there is a restriction on the transfer of shares. Before any shares of the corporation can be sold or transferred, they must first be offered to the corporation and then to the existing shareholders in proportion to their shareholder interest. There are specific notice requirements set forth in Section 8. Any sale or transfer of shares of the corporation by any holder, which would include CPRI, is null and void unless Section 8 is complied with.

69.   Since he became a shareholder of CPRI in 1984, Plaintiff has never received any notice of the intent by Defendants to sell or transfer, or be the recipient of the sale or transfer, of shares of CPRI stock. Yet, as set

forth in this Complaint, Defendants have repeatedly sold, transferred and received CPRI stock in violation of Section 8 of the Bylaws, a fact that Plaintiff was prevented from discovering until he was first permitted to see the CPRI board minutes in 2023.

70.   Plaintiff seeks a declaration of validity of Defendants' sales and transfers, as sellers, buyers, transferors and transferees, of CPRI stock, as well as Plaintiff's rights as an existing shareholder to purchase the stock on the same terms.

## PRESENTATION TO CPRI BOARD BEFORE FILING

71.   Plaintiff contends that it would be futile to submit Plaintiff's claims in this Complaint to the CPRI board of directors to take action as the CPRI board of directors are the very persons who Plaintiff alleges engaged in the wrongful conduct. Nevertheless, on October 1, 2024, the draft of this Complaint was sent to the CPRI board of directors through CPRI's counsel, asking that action be taken and Plaintiff offered to meet with the CPRI board to work through the issues raised. On October 4, 2024, CPRI's counsel responded and acknowledged that the Complaint and exhibits were forwarded to the President of CPRI.  On November 1, 2024, counsel for CPRI asked for a list of demands or action to be taken by the Board of Directors.  On November 13, 2024, Plaintiff responded with a list of demands which was for an accounting and an audit of the books and records, the shareholder ledger with an analysis of the source of the shares and the consideration paid, and profit and loss statements for the last five years. There was no further response by CPRI and its counsel.

Wherefore, Plaintiff prays as follows:

On the First Cause of Action:

1.   For damages to be proved at the time of trial;

COMPLAINT

..

2.    For prejudgment interest at the maximum legal rate.

On the Second Cause of Action:

3.    For an order for an accounting by CPRI for the expenses paid by CPRI for Bob Irvin's, Betty Irvin's and Diane Irvin's horseracing hobby as well as for any income received by CPRI from the horseracing hobby.

4.    For an order for an accounting of the shareholder interests for CPRI, how the shares were acquired and the consideration paid, including Plaintiff's own shareholder interest.

5.    For an order for an accounting for all PRF Insurance payments, where the money was allocated and why.

On the Third Cause of Action:

6.    For a declaratory judgment on the validity of Defendants' sales and transfers, as sellers, buyers, transferors and transferees, of CPRI stock, as well as Plaintiff's rights as an existing shareholder to purchase the stock on the same terms.

On All Cause of Action:

7.    For costs of suit.

8.    For expert fees.

9.    For such further relief as the court deems appropriate.


DATED: February 12, 2025          RUSSO & DUCKWORTH, LLP

                                  *J. Scott Russo*

                                  _____
                                  J. Scott Russo
                                  Attorneys for Plaintiff Richard Irvin

COMPLAINT

..

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, Richard R. Irvin hereby demands a jury trial in the above-captioned action.
.

DATED: February 12, 2025          RUSSO & DUCKWORTH, LLP

*J. Scott Russo*

_____
J. Scott Russo
Attorneys for Plaintiff Richard Irvin

COMPLAINT